NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220738-U

NO. 4-22-0738

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| KURT R. OLSEN, | ) | No. 21CF183 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding defendant had not established plain error or ineffective assistance of counsel.

¶ 2     Following a jury trial, defendant, Kurt R. Olsen, was convicted of child pornography and aggravated criminal sexual abuse and sentenced, respectively, to 15 years and 4 years in prison. Defendant appeals, challenging (1) the trial court's refusal to grant him a continuance to hire private counsel and (2) the State's introduction of a video recording containing images of adult pornography. Defendant acknowledges he has forfeited these issues by failing to adequately raise them below but requests they be reviewed as a matter of plain error and ineffective assistance of counsel. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Pretrial Proceedings

¶ 5         On November 15, 2021, the State charged defendant by information with two counts of child pornography (720 ILCS 5/11-20.1(a)(1), (a)(6) (West 2020)) and two counts of aggravated criminal sexual assault (*id.* § 11-1.60(b), (c)(1)(i)). That same day, defendant appeared, in custody, before the trial court. The court appointed counsel to represent defendant and scheduled a preliminary hearing for December 2, 2021. Defendant remained in custody throughout the pretrial proceedings.

¶ 6         On December 2, 2021, defendant appeared with appointed counsel for the scheduled preliminary hearing. Defendant's counsel acknowledged receipt of bills of indictment, waived further reading and explanation, and asked for the entry of pleas of not guilty and a discovery order. The trial court entered pleas of not guilty and a discovery order and scheduled a pretrial hearing for January 5, 2022, and a jury trial for January 18, 2022.

¶ 7         On January 5, 2022, defendant appeared with appointed counsel for the scheduled pretrial hearing. Defendant's counsel confirmed the case would remain scheduled for trial on January 18, 2022, and noted he had just received additional discovery and planned on reviewing it with defendant. At the conclusion of the hearing, defendant expressed a desire to terminate the services of his counsel. Defendant explained he was not satisfied with counsel's communication with him or his family. The trial court informed defendant his counsel had recently been on vacation and had been "exceptionally busy in the courtroom" both before and after that vacation. Defendant maintained he was not satisfied with counsel's communication and requested the appointment of new counsel. The court denied defendant's request.

¶ 8         On January 18, 2022, defendant appeared with appointed counsel for the scheduled jury trial. At the commencement of the proceeding, defendant expressed a desire to waive his right

to a speedy trial and noted he was "not being represented properly," his family was "gathering funds" to hire private counsel, and he "already had a meeting with an attorney, Stephanie Wong." On inquiry of the trial court, defendant complained about communication issues with his appointed counsel and asserted his counsel had not "gone properly through everything" with him. Defendant's counsel, in response, indicated he had met with defendant on multiple occasions and had reviewed discovery with defendant. With respect to defendant's comments about hiring private counsel, defendant's counsel stated:

> "Judge, I met as recently as yesterday with [defendant]. This was not mentioned. If he is hiring Ms. Wong, I have no objection to that. He is entitled to representation of his choice. I would have made a proper motion for a continuance if that had been brought up with me. But given that he has expressed what he has expressed, I will ask for a continuance. It sounds like he is prepared to waive any speedy trial issues."

The State objected to a continuance, noting it was ready for trial and had "a young witness that's ready to go either today or tomorrow." Defendant's counsel, on inquiry of the court, indicated he was prepared to proceed with trial. The court denied defendant's request for a continuance. In doing so, the court highlighted the absence of an appearance by private counsel and the fact both the State and appointed counsel were ready to proceed.

¶ 9        Following a recess, defendant's appointed counsel renewed defendant's request for a continuance for substitution of counsel. Counsel stated:

> "I did have an opportunity between when I was here last and now to speak with Stephanie Wong. It does appear that Ms. Wong

did meet with [defendant] last week. I think after her conversation with [defendant] he was under the impression that he needed to do nothing more than waive his right to speedy and ask for a continuance in front of the court without even speaking to me."

The trial court inquired about the absence of an appearance from Ms. Wong, to which defendant's counsel stated Ms. Wong had "not been paid" and would not be "entering her appearance" until she "gets retained." Defendant's counsel further noted defendant expected payment "to happen very shortly." The State, in response, maintained it was ready for trial. The court denied defendant's renewed request for a continuance. In doing so, the court highlighted both the absence of an appearance by private counsel and the fact the request was made on the day of the scheduled trial.

¶ 10                                     B. Jury Trial

¶ 11            On January 18 and 19, 2022, the trial court conducted a jury trial. The State presented testimony from Z.S., Z.S.'s mother, a pastor, and two police officers. The State also introduced two video recordings, still images taken from one of the video recordings, several items of clothing, photographs of a bedroom, and a cell phone. Defendant did not present any evidence. The following is gleaned from the evidence presented.

¶ 12            In November 2021, Z.S., who at the time was 11 years old, resided with her mother, younger sister, and stepfather, defendant, who at the time was 38 years old. Z.S.'s mother and defendant had been married for approximately two years but had known each other for over a decade. Defendant had lived with Z.S.'s mother and the children for several years. Z.S., at the time, referred to defendant as "Dad."

¶ 13            Z.S. testified about two incidents occurring between her and defendant while she

was in the fifth grade. The second incident occurred on or about November 11, 2021, while Z.S.'s mother was at work and defendant, who had recently lost his job, was at home. Z.S. explained she was about to take a shower when defendant stated he wanted a "hug." Z.S. went into the bedroom defendant shared with Z.S.'s mother. Z.S. testified defendant "pulled me on top of him," causing her legs to straddle his body. Z.S. felt "uncomfortable, scared, nervous, anxious." She was wearing a pajama top, which she had received for her birthday, but no bottoms or underwear. She described her pajama top as "pink in the background" and having a rainbow, stars, a panda, and hearts. Z.S. testified she, at defendant's direction, put her "head into the blankets" and then defendant "put his hand on *** my butt cheek" and "kind of, like, spread it apart." Defendant "kept on saying don't tell mom and for me to keep on putting my head into the blankets." Z.S. testified she received a "[s]imilar" type of "hug" from defendant earlier that school year. She did not recall what she was wearing on that occasion. Z.S. testified her hair appeared similar at trial to how it would have appeared during both incidents, which she agreed could be characterized as "pouffy." Z.S. testified she did not tell anyone about the incidents immediately after they occurred because defendant "didn't want me to" and because defendant would often be around.

¶ 14　　　　　Z.S.'s mother testified, on November 12, 2021, at about 4 a.m., she awoke next to defendant in their bedroom and noticed the "screen" on defendant's cell phone "was still on." She took the phone and, while still in the bedroom, opened a "secured file" on it and a "folder that said photo gallery." She discovered "a bunch of *** pornographic pictures and videos." She noticed one of the videos appeared to show the bedroom she shared with defendant. She played that video and, upon doing so, noticed Z.S.'s "head poking up." She recognized Z.S. based upon her hair, which she described as "very pouffy." At that point, Z.S.'s mother left the bedroom and went to the bathroom, taking with her both defendant's phone as well as her own cell phone. While in the

bathroom, she, after throwing up from just seeing the video of her daughter, used her phone to video record her quickly scrolling through some of the videos and pictures on defendant's cell phone. She testified two of the videos showed Z.S. and defendant in the bedroom with Z.S. on top of defendant and defendant's hands on Z.S.'s bare bottom. Z.S.'s mother returned defendant's phone to the bedroom and went to wake the children.

¶ 15        After waking the children, Z.S.'s mother showed Z.S. a portion of the video recording she made on her cell phone. Z.S. testified she, at that moment, realized she and defendant were shown in the recording. Z.S. had no doubts she was shown in the recording. Z.S.'s mother and the children left their home and went to the home of Z.S.'s grandmother. Z.S.'s mother tried to calm the children and contact her counselor. Unable to contact her counselor, Z.S.'s mother went to a local church.

¶ 16        Z.S.'s mother spoke with a pastor and police officers while at the church. The pastor described Z.S.'s mother as "very emotional, crying almost to the point she couldn't talk for a little while." The pastor explained he was able to calm Z.S.'s mother and have her explain what had occurred. The pastor then called the police. A police officer who met with Z.S.'s mother at the church described her as "very emotional" and "upset." Z.S.'s mother showed the officer the video recording she made on her cell phone. Another police officer who arrived at the church described Z.S.'s mother as "very emotional, crying, wiping tears from her eyes." While at the church, Z.S.'s mother received multiple phone calls from defendant. Eventually, one of the police officers answered an incoming call and spoke with defendant. Defendant agreed to meet the officers at the police station shortly thereafter.

¶ 17        Defendant was interviewed at the police station. The State introduced an audio and video recording of the interview. During the interview, defendant acknowledged having adult

pornography stored on his cell phone. Defendant also acknowledged he had been depressed and overwhelmed because he had recently lost his job. He denied engaging in any improper conduct with Z.S.

¶ 18 Z.S.'s mother testified she had since spoken with Z.S. about the incidents with defendant. She asserted she did so to console her daughter, who had been having "a lot of nightmares." She did not tell Z.S. what to say, nor did they have an in-depth conversation about what had occurred. Z.S.'s mother maintained her focus was "[l]istening and consoling." She explained: "[Z.S.] was just emotional through the whole thing. She was confused, hurt, didn't know why her—what she called him at the time daddy would do something like this to her, and she just wanted to talk about it."

¶ 19 The State moved to introduce evidence of the video recording taken from the cell phone of Z.S.'s mother. Defendant objected on the basis the video recording contained images of adult pornography that were irrelevant and overly prejudicial. Over defendant's objection, the trial court admitted the evidence. The recording shows a thumb quickly scrolling through videos and images on a cell phone. In the videos, no faces can be seen. Some of the images are of undisputed adult pornography.

¶ 20 Z.S.'s mother testified the individuals in the videos in which no faces can be seen were her husband, defendant, and her daughter, Z.S. She identified defendant upon seeing (1) part of a black panther tattoo defendant had on his arm, (2) a black wedding ring defendant wore, (3) a mesh T-shirt defendant wore, (4) jeans defendant wore, and (5) a belt defendant wore. She identified Z.S. upon seeing (1) her hair, (2) a pajama top Z.S. wore, and (3) a tie-dyed shirt Z.S. wore. Z.S.'s mother testified Z.S. received the pajama top as a birthday present and the tie-dyed shirt as a gift from Z.S.'s grandmother. Z.S.'s mother also testified the videos were taken in the

bedroom she shared with defendant. She identified her bedroom upon seeing various items inside the room. On cross-examination, Z.S.'s mother agreed the various items upon which she based her identifications were not, by themselves, unique. She maintained, however, she was certain in her identifications.

¶ 21    The State introduced various still images of the video recording taken from the cell phone of Z.S.'s mother. Z.S. identified herself in some of the images. The State also introduced various items of clothing that Z.S.'s mother provided to the police, including pajamas and a tie-dyed shirt as well as a mesh T-shirt, jeans, and a belt. Z.S. identified the pajamas and the tie-dyed shirt as items she owned. Z.S. also identified the pajamas as the ones she wore during the second incident with defendant. She did not recall if she wore the tie-dyed shirt during the first incident with defendant. Z.S.'s mother identified the mesh T-shirt, jeans, and belt as defendant's clothing. Z.S. identified the mesh T-shirt as the T-shirt defendant wore during the second incident with her. The State introduced photographs of the bedroom shared by Z.S.'s mother and defendant.

¶ 22    During closing arguments, the State acknowledged it had to show the acts committed by defendant occurred for the purpose of sexual gratification or arousal of defendant or Z.S. In support of its argument that defendant committed the acts for his sexual gratification or arousal, the State highlighted, amongst other things, defendant recorded the acts and kept the recordings in a private folder containing adult pornography. The defense, in response, acknowledged the alleged child pornography was kept "in a folder full of adult pornography" but suggested the jury could "decide that that is all adult pornography."

¶ 23    The jury returned verdicts finding defendant guilty of all charged offenses.

¶ 24    C. Posttrial Proceedings

¶ 25    In June 2022, the trial court merged the findings of guilt and then sentenced

- 8 -

defendant to 15 years in prison on one count of child pornography and 4 years in prison on one count of aggravated criminal sexual abuse. The prison sentences were ordered to be served consecutively. Defendant later filed a motion to reconsider his sentence, which the court denied.

¶ 26  This appeal followed.

¶ 27          II. ANALYSIS

¶ 28  On appeal, defendant challenges (1) the trial court's refusal to grant him a continuance to hire private counsel and (2) the State's introduction of the video recording containing images of adult pornography. Defendant acknowledges he has forfeited these issues by failing to raise them in a posttrial motion but requests they be reviewed as a matter of plain error and ineffective assistance of counsel. The State, in response, asserts defendant has not established plain error or ineffective assistance of counsel.

¶ 29  The plain-error doctrine provides a "narrow and limited exception" to the general rule of forfeiture. *People v. Jackson*, 2020 IL 124112, ¶ 81, 162 N.E.3d 223. Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error in two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172.

The defendant bears the burden of persuasion in establishing plain error. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015.

¶ 30     Forfeited issues may also be addressed as a matter of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, the following must be shown: "[(1)] that counsel's performance was objectively unreasonable under prevailing professional norms and [(2)] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125. The defendant bears the burden of persuasion of establishing ineffective assistance. *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 31     First, defendant challenges the trial court's refusal to grant him a continuance to hire private counsel. Defendant asserts the court's refusal to grant him a continuance was an abuse of its discretion and denied him his sixth amendment right to retain counsel of his choice. See U.S. Const., amend. VI. In support of that assertion, defendant highlights he articulated his dissatisfaction with appointed counsel's performance; he was in continuous pretrial custody; he was willing to waive his speedy trial rights; he had already contacted private counsel; and appointed counsel had represented him, and the case had been pending, for only a short period. Defendant further asserts (1) the refusal to grant him a continuance was a plain and obvious error which affected the fairness of his trial and challenged the integrity of the judicial process and (2) his counsel provided ineffective assistance by failing to preserve this meritorious issue for appeal.

¶ 32     "The sixth amendment guarantees a criminal defendant the right to assistance of counsel (U.S. Const., amend. VI), which encompasses the right to effective representation as well as the right to select and be represented by one's preferred attorney." *People v. Rivera*, 2013 IL

112467, ¶ 37, 986 N.E.2d 634. However, "[t]he right to counsel of choice is not absolute and is circumscribed in several respects ". *Id.* One such respect is "where the exercise of that claimed right would delay or impede the effective administration of justice." *People v. Barrow*, 133 Ill. 2d 226, 252, 549 N.E.2d 240, 251 (1989). "Thus, a court must balance the right of a defendant to choose his or her counsel against the need for efficient and effective administration of justice." *People v. Curry*, 2013 IL App (4th) 120724, ¶ 48, 990 N.E.2d 1269.

¶ 33        The decision to grant or deny a continuance for substitution of counsel is a matter left to the discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245, 725 N.E.2d 1275, 1283 (2000). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 106, 946 N.E.2d 359, 395-96 (2011).

¶ 34        When assessing a trial court's denial of a continuance for substitution of counsel, factors to be considered include the diligence of the movant, the right of the defendant to a speedy, fair, and impartial trial, and the interests of justice. *Segoviano*, 189 Ill. 2d at 245. The general rule, as articulated by our supreme court, is "that a trial court will not be found to have abused its discretion in denying a motion for substitution of counsel in the absence of ready and willing substitute counsel." *Id.* This court has further recognized a court will not be found to have abused its discretion " 'where new counsel is unidentified or does not stand ready, willing, and able to make an unconditional entry of appearance on defendant's behalf.' " *Curry*, 2013 IL App (4th) 120724, ¶ 49 (quoting *People v. Childress*, 276 Ill. App. 3d 402, 411, 657 N.E.2d 1180, 1186 (1995)).

¶ 35        In this case, defendant, on the day of his scheduled jury trial, requested a continuance for substitution of counsel. The trial court conducted an inquiry into defendant's request. Through that inquiry, the court learned defendant's appointed counsel was prepared and ready to proceed with trial because defendant had not conveyed his efforts to obtain private counsel or his intent to seek a continuance for substitution of counsel. The court also learned the private attorney with whom defendant had been in contact would not enter an appearance unless she was paid her retainer, which defendant had not tendered. Stated differently, the court learned defendant did not have new counsel who stood ready, willing, and able to make an unconditional entry of appearance on defendant's behalf. Under these circumstances, we find the court's decision to deny a continuance for substitution of counsel was not an abuse of its discretion. Absent any error, the court's refusal to grant a continuance cannot amount to plain error, and counsel's failure to preserve this issue cannot constitute ineffective assistance.

¶ 36        In so finding, we have considered *People v. Adams*, 2016 IL App (1st) 141135, 50 N.E.3d 738, and *People v. Bingham*, 364 Ill. App. 3d 642, 847 N.E.2d 903 (2006), the two cases primarily relied upon by defendant in support of his position, and found both to be distinguishable. In *Adams*, 2016 IL App (1st) 141135, ¶ 16, the trial court "utter[ly] fail[ed] to make any kind of inquiry" into the defendant's request for a continuance. Similarly, in *Bingham*, 364 Ill. App. 3d at 645, the trial court failed to conduct an inquiry into the circumstances and purposes of the defendant's motion for a continuance. See also *Curry*, 2013 IL App (4th) 120724, ¶ 51 (distinguishing *Bingham*). Unlike *Adams* and *Bingham*, the trial court in this case conducted an inquiry into defendant's request for a continuance, an inquiry which showed, amongst other things, defendant did not have new counsel who stood ready, willing, and able to make an unconditional entry of appearance on defendant's behalf.

¶ 37    Second, defendant challenges the State's introduction of the video recording containing images of adult pornography. Defendant asserts the images of adult pornography were irrelevant and overly prejudicial. Defendant further asserts (1) the introduction of the unredacted video recording was a plain and obvious error which threatened to tip the scales of justice against him in this closely balanced case and (2) his counsel provided ineffective assistance by failing to preserve this meritorious issue for appeal or, to the extent there was no error in the introduction of the unredacted video recording, by failing to request an instruction limiting the jury's consideration of the evidence.

¶ 38    In this case, we find it unnecessary to consider whether the introduction of the video recording containing images of adult pornography amounted to error because it is clear defendant has not shown the evidence was so closely balanced that the alleged error threatened to tip the scales of justice against him. See *People v. Scott*, 2015 IL App (4th) 130222, ¶ 32, 25 N.E.3d 1257 (finding it unnecessary to consider whether any error occurred where the evidence was not closely balanced). Similarly, we find it unnecessary to consider whether trial counsel's failure to preserve this issue for appeal or to request a limiting instruction amounted to constitutionally deficient performance because it is clear defendant has not shown there is a reasonable probability the result of the proceeding would have been different had counsel objected or requested an instruction. See *People v. Hale*, 2013 IL 113140, ¶ 17, 996 N.E.2d 607 (acknowledging a court "may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance").

¶ 39    The evidence of defendant's guilt is overwhelming. Z.S. testified about two incidents of sexual abuse committed by defendant, her stepfather. She described in detail the incident occurring on or about November 11, 2021. She later observed a portion of a video

recording and was able to identify herself and defendant in the video. Z.S.'s mother testified about videos she discovered on the cell phone belonging to defendant, her husband. She identified Z.S., defendant, and the bedroom she shared with defendant in the videos. The video and other evidence corroborated the testimony of Z.S. and Z.S.'s mother. Even if the images of the adult pornography would have been redacted, the jury still would have received evidence about defendant having adult pornography on his cell phone and would have observed the videos of the alleged child pornography. After our review, we find the evidence was far from closely balanced, and there is no basis to conclude, but for counsel's failure to preserve the issue for appeal or request a limiting instruction, the result of the proceeding would have been different. See *People v. Pulliam*, 176 Ill. 2d 261, 276-77, 680 N.E.2d 343, 351 (1997) (finding the error in admitting a book entitled "Force of Sex" was harmless where the properly admitted evidence of defendant's guilt was overwhelming); *People v. Theis*, 2011 IL App (2d) 091080, ¶ 45, 963 N.E.2d 378 (finding counsel's failure to request a limiting instruction did not prejudice the defendant where the evidence of guilt was overwhelming).

¶ 40        In sum, defendant has not established plain error or ineffective assistance of counsel.

¶ 41                         III. CONCLUSION

¶ 42        We affirm the trial court's judgment.

¶ 43        Affirmed.