1-99-1788 
FIRST DIVISION

March 30, 2001

THE PEOPLE OF THE STATE OF )   Appeal from the

ILLINOIS, )   Circuit Court of

 )   Cook County

Plaintiff-Appellee )

 )

 )   No. 98 CR 19106

 )

CION RICE, )   The Honorable

 )   Joseph G. Kazmierski, Jr.,

Defendant-Appellant. )   Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

The defendant and codefendant were charged by indictment with five counts of first degree murder, three counts of attempted first degree murder, one count of aggravated battery with a firearm, two counts of aggravated discharge of a firearm and two counts of aggravated battery.  The defendant and the codefendant received separate trials.

A jury convicted the defendant of first degree murder and attempted first degree murder.  At the sentencing hearing the State presented a multitude of victim impact statements.  The trial court granted a motion by the defense asking that it consider only those statements from the immediate family of the murder victim and not those from friends and employers.  The trial court sentenced the defendant to concurrent terms of 50 years in prison for the first degree murder and 10 years for the attempted first degree murder. 

The defendant appeals his conviction, arguing that the trial court committed reversible error in admitting hearsay testimony from police officers to the effect that bystanders at the crime scene had said the defendant was involved in the crime.  He also appeals his sentence, arguing that by statute the court was only permitted to consider one victim impact statement in sentencing him for murder.  The State contends that the defendant's sentence is void and that he must be resentenced because the sentencing statute mandated consecutive rather than concurrent sentences.

We affirm.

BACKGROUND

The following evidence was presented at the trial of defendant, Cion Rice.  (His codefendant, Donzell Lowe, was tried separately.) Late in the evening of June 21, 1998, Reggie Rupert and his girlfriend Gerchaton Young (Gercha) were talking outside the house of her cousin, Kamara Evans.  Reggie had been charged with the murder of the brother of Donzell Lowe and was now out on bail.  Gercha was sitting in the front passenger seat of a car parked in front of Kamara's house.  Gercha's sister Quintina Young sat in the driver's seat.  Reggie stood outside the car next to Gercha.  Kamara and Lawanna Smith, a friend of Quintina and Gercha, stood outside the car next to Quintina.  Terrell Robinson, another cousin of Quintina and Gercha, stood on the sidewalk nearby. 

According to Reggie Rupert, at about 11:20 p.m. a maroon car came down the street with four people inside.  The two men in the backseat started firing at them.  Reggie testified that he recognized the man in the backseat on the driver's side as Cion Rice, whom he had seen a few times previously around the neighborhood.  He recognized the man in the backseat on the passenger side as Donzell Lowe.  Reggie further testified that when the shooting started, a few bullets went by him, and then one hit him in the hand and another hit him in the right hip.  He fell to the ground behind the car.  Shortly afterward he heard Kamara screaming Gercha's name.  He did not see either Cion or Donzell exit the car during the course of the attack. 

When the police came, Reggie told them that he recognized the gunmen as Donzell and Cion.  Paramedics then arrived at the scene and took Reggie to Christ Hospital, where he remained for two days.  Two detectives interviewed him at the hospital.

Terrell Robinson testified that the neighborhood where the shooting took place was controlled by the Gangster Disciples street gang.  Terrell said that he thought Reggie was a Gangster Disciple but did not know for certain.  In the days before the shooting, Cion had been riding around the neighborhood on a bicycle.  As he did, he would often make hand signs insulting to the Gangster Disciples.  Three days prior to the shooting, Terrell had been standing outside with Reggie and some other gang members.  Cion passed on his bicycle and pointed at Reggie and said he was going to kill him.

Terrell said that on the night of June 21, 1998, a reddish car drove by and he saw Cion with his hands out the window firing a gun.  Cion was in the backseat on the driver's side.  Terrell said Cion was the only person that he saw with a gun.  He did not see anyone get out of the car.  After he heard a couple of shots, Terrell started running.  He took refuge in a neighbor's house until he heard the car pull off.  When he went back outside, he saw Reggie in the street saying that he had been shot.  Terrell told his grandmother and she called the police.  When he went outside again, Quintina said that Gercha had been shot.

Lawanna Smith testified that she knew Gercha and Reggie and knew Cion and Donzell as well.  She had attended grade school with Cion.  When the shooting occurred, she had gone inside the house to talk to her boyfriend.  She heard gunshots and went to the window.  She saw Cion standing on the sidewalk across the street holding a gun.  She did not see a car on the street other than Gercha's.  She then ran downstairs.  When she got outside, Cion had gone.  Reggie was lying in the street saying he had been hit.

Kamara Evans and Quintina Young testified that they heard gunshots and felt bullets whiz by them but in the commotion they did not see the assailants.  One bullet went through Kamara's hair, grazing her scalp.  After the gunfire ceased, Quintina saw that Gercha had been shot in the head.  She went with Gercha to the hospital where, soon afterward, Gercha died.

Chicago police officer Sean Pickett testified that he and his partner, Officer Saul Arambula, went to the scene of the shooting in response to a radio call.  When they arrived, about 30 onlookers were crowding around the car.  He and his partner spoke with the onlookers.  At trial the prosecutor asked:

"Q. Did you develop information or did you and your partner develop information as to people who maybe were involved in this shooting?

A. Yes

Q. What names did you receive?

A. Cion and Donzell."

Chicago police officer Charles Kocanda testified that he and his partner, Officer Andre Parham, heard the radio call and went to the scene of the shooting.  When they arrived, many bystanders were around screaming and yelling for help.  They exited the car to investigate and Officer Kocanda "walked down to talk to the young man lying on the street."

"Q. Between the two of you did you and your partner develop information as to somebody who was involved in this shooting?

A. Yes.

Q. What name did you develop?

A. The name that I learned was Cion."

 One of the bystanders led them to Cion's house.  They rang the doorbell and an elderly man answered.  They later learned that this man was Cion's grandfather, W.C. Rice.  The officers said they wanted to speak to Cion and W.C. let them in and called him.  Cion came out from the rear of the house wearing dark shorts, gym shoes and no shirt.  After Cion put on a shirt they took him to the scene of the shooting and then later to the police station.

The defendant called three family members as witnesses: his grandfather W.C. Rice, his grandmother Catherine Rice and his sister Davina Rice.  Cion also took the stand on his own behalf.  The members of the Rice family testified that, at the time of the shooting, Cion was subject to a court-ordered curfew.  He was only permitted to leave the house to go to school.  W.C. drove him to and from school.  Cion did not have a car.  The curfew was monitored by people who sometimes called or came to the house to make sure Cion was there.  However, no one called or came by on June 21, 1998.

The family lived in a three-bedroom house a few blocks away from the scene of the shooting.  All the outer doors were locked and could only be opened, even from the inside, with a key.  The windows in Cion's room had bars, which also could only be opened with a key.  Only W.C. and Catherine had keys.  Catherine went to bed around 8 p.m. on June 21, 1998.  She had all the keys in her bedroom in her dresser.  She testified that she locks her bedroom from the inside.  Davina testified that Cion was there when she went to bed around 10:30.  W.C. was watching television in the living room that evening.  He testified that Cion was in his bedroom watching television also.  The only time W.C. saw Cion leave his room was to get something to drink from the refrigerator at around 11:20 p.m.  At around 11:45, the police rang the doorbell and W.C. got the keys from the bedroom and let them in. 

W.C. and Cion testified that on June 18, 1998, the day when Cion was alleged to have threatened Reggie, Cion went straight to school and straight home and did not leave the house the rest of the day.  All four family members testified that Cion did not have a bicycle.

Cion testified that he was a member of the Blackstones street gang, as was Donzell.  The Blackstones are a rival gang of the Gangster Disciples.  Cion had known Donzell since kindergarten.  He admitted that he had been upset at the time when Donzell's brother was killed.  He denied he was still upset, however, explaining that the murder occurred three years previously and, in any case, he had not been a close friend of Donzell's brother.

The jury convicted Cion of the first degree murder of Gercha Young and the attempted first degree murder of Reggie Rupert.

At the sentencing hearing the State presented 23 victim impact statements.  The defense moved to strike the statements from friends and employers, arguing that the applicable statute mandated that only statements from family members could be considered.  The judge granted the motion and said he would only consider the 10 victim impact statements that were from members of Gercha Young's family.  The judge sentenced the defendant to concurrent terms of 50 years' imprisonment for the first degree murder and 10 years' imprisonment for the attempted first degree murder.  The defendant made a motion for a new trial, arguing that there had been insufficient evidence to sustain his conviction.  The trial court denied the motion.

The defendant now appeals his convictions and his sentence.  He argues that his convictions must be overturned because the court improperly admitted hearsay testimony from Officers Pickett and Kocanda relating that unnamed bystanders identified Cion and Donzell as the gunmen.  The defendant further argues that his sentence must be vacated and remanded for a new hearing because according to statute the trial court was permitted to consider only one victim impact statement from a member of Gercha Young's family.  The State also argues that the sentence must be vacated and remanded.  According to the State, the sentence is void because it is in violation of a statutory requirement.  The State argues that, under the sentencing statute, the trial court was required to impose consecutive, rather than concurrent, terms of imprisonment.

ANALYSIS

I

Officer Kocanda and Officer Pickett both testified that they were given the defendant's name as a person who might be involved in the crime.  Also, they testified that someone told them where the defendant lived.  According to the defendant, all this testimony was inadmissible hearsay.  The defendant did not object to the purported hearsay testimony at trial or in a posttrial motion.  Accordingly, the State contends that the defendant has waived the issue.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988).  The defendant now asks us to nevertheless reach the issue under the plain error exception. 134 Ill. 2d R. 615(a).

The testimony of Officer Kocanda does not present a hearsay problem.  While it is true that Officer Kocanda testified that his partner, Officer Parham, talked to bystanders at the crime scene, Officer Kocanda testified that he himself spoke to "the young man lying on the street," 
i.e.
, Reggie Rupert.  While the prosecutor asked about information given both to Officer Kocanda and to his partner, Officer Kocanda only related the information that Reggie gave to him, and not the (potentially double hearsay) statements that unnamed bystanders may or may not have made to his partner.  Reggie Rupert was in court and had already testified that he had given the police the defendant's name.  His testimony identifying the defendant as one of the gunmen was subject to adversarial testing.  As a result, Officer Kocanda's testimony was admissible under a provision of the Code of Criminal Procedure of 1963:

"Substantive Admissibility of Prior Identification.  A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115-12 (West 1998).

Officer Pickett's "hearsay" testimony, however, raises significantly more complex issues.  In response to the prosecutor's questioning, Officer Pickett testified that he and his partner had received information from unidentified bystanders that Cion and Donzell were "involved in" the shooting.  In context, we believe "involved in" clearly implied that they were the gunmen or accomplices.

The State correctly notes that an officer may testify regarding his or her investigatory procedures, including the occurrence
 of conversations, without violating the hearsay rule.  
People v. Jones
, 153 Ill. 2d 155, 159-60, 606 N.E.2d 1145, 1146 (1992).  This is true even if a logical inference may be drawn that the officer took subsequent steps as a result of the substance of that conversation.  
People v. Gacho
, 122 Ill. 2d 221, 248, 522 N.E.2d 1146, 1159 (1988). 

Here the testimony in question revealed not only the occurrence of the conversation, but also the content of the conversation.  At one time, this arguably would have rendered the testimony inadmissible.  See 
Gacho
, 122 Ill. 2d at 248, 522 N.E.2d at 1159. However, in 
People v. Pulliam
, 176 Ill. 2d 261, 680 N.E.2d 343 (1997), the Illinois Supreme Court seems to have given its imprimatur to the introduction of the contents of such statements.  In 
Pulliam
, the defendant had attempted to escape arrest by the police.  The statements at issue in 
Pulliam
 were statements pointing out the suspect as she fled ("There she goes, right there, she's running"), and exclamations when the defendant was apprehended ("They got her, there she is right there, they got her in the car").  
Pulliam
, 176 Ill. 2d at 273, 680 N.E.2d at 349. The supreme court found that the statements were not offered to show the truth of the matter asserted, 
i.e.
, that the defendant fled and that she was taken into custody. 
Pulliam
, 176 Ill. 2d at 274, 680 N.E.2d at 350.

The State insists that Officer Pickett's testimony was offered to shed light on police procedure rather than to establish the truth of the matter related.  However, this bare assertion of the State does not automatically render the testimony admissible.  This court is not obligated to accept the State's interpretation of what the purpose of the testimony was.  
People v. Warlick
, 302 Ill. App. 3d 595, 599, 707 N.E.2d 214, 218 (1998).  Conversations between police and people providing information about a crime will generally occur in the context of an investigation.  The reality is that it will almost always be possible to describe testimony revealing the content of conversations with the police as evidence offered to shed light on the investigation of the crime rather than on the crime itself.  If reviewing courts allowed the mere invocation of the words "police procedure" to preclude further analysis, this limited exception would effectively swallow the hearsay rule with regard to police officers.  The compelling protections that gave rise to the hearsay rules must not be so easily discarded.

The facts before us bear much resemblance to those in 
People v. Furby
, 228 Ill. App. 3d 1, 591 N.E.2d 533 (1992).  The defendants in 
Furby
 were charged with theft.  In the course of his testimony, a police officer let slip that an anonymous source had told him that one of the defendants was possibly "involved in" the theft. 
Furby
, 228 Ill. App. 3d at 9, 591 N.E.2d at 539. As in this case, the defense did not object.  Nevertheless, the appellate court reviewed the testimony as plain error.  
Furby
, 228 Ill. App. 3d at 8, 591 N.E.2d at 539.

On appeal, the State argued that the officer's testimony was "intended to show that [the officer] received information from an anonymous source--not that Jim Furby was guilty."  
Furby
, 228 Ill. App. 3d at 10, 591 N.E.2d at 540.  However, the court noted that other evidence that had been presented already established all that this testimony could legitimately be used to prove.  Accordingly, the court concluded:

"The only conceivable reason for the complained-of testimony was to further tie James to the theft charge.  Contrary to the State's argument, we find that the testimony was admitted for the truth of the matter asserted and is, therefore, hearsay." 
Furby
, 228 Ill. App. 3d at 10, 591 N.E.2d at 540.

Even if we do accept that the State elicited the testimony in question for the purpose of shedding light on police procedure, that must not be the end of the inquiry.  The testimony, considered as an explanation of police procedure, must be relevant to a fact of consequence in the case.  See 
People v. Monroe
, 66 Ill. 2d 317, 321-22, 362 N.E.2d 295, 297 (1977). "[T]he explanation for why the police did what they did may add nothing to the determination of the defendant's guilt or innocence."  
1 B. Bergman & N. Hollander, Wharton's Criminal Evidence §4:47, at 489 (15th ed. 2000).  The State has not explained why police procedure was of consequence in determining the defendant's guilt or innocence.  "Mere curiosity does not establish relevance."  
Warlick
, 302 Ill. App. 3d at 600, 707 N.E.2d at 218.  

Furthermore, here, as in 
Furby
, other testimony had already filled the narrative gap that the complained-of testimony was supposedly intended to fill.  Reggie Rupert had already testified that he gave the defendant's name to the police.  Officer Kocanda also gave admissible testimony to that effect.  Accordingly, in the absence of the out-of-court identification related by Officer Pickett there still would have been no confusion as to why the police then went to talk to the defendant.  

The out-of-court identification repeated by Officer Pickett, considered solely as an explanation of police procedure, was at worst of no relevance and at best marginally relevant but cumulative and unnecessary.  "[A] police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact."  
People v. Simms
, 143 Ill. 2d 154, 174, 572 N.E.2d 947, 954-55 (1991).  Here, the complained-of testimony was neither.

If the testimony is relevant, the court should determine whether its probative value (considered only for its admissible purpose) is substantially outweighed by the danger of unfair prejudice from jury misuse of the testimony. 
Warlick
, 302 Ill. App. 3d at 599, 707 N.E.2d at 218.  Very often this type of testimony will not pass the balancing test, for it is likely that any probative value of the testimony via elucidation of investigatory procedure will be overshadowed by its impact as considered for its truth.  "Investigatory steps taken by a police officer are rarely more than marginally relevant at best, while the risk of jury misuse of the information at great expense to the accused is substantial." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.5, at 733 (7th ed. 1999). See also 2 J. Strong, McCormick on Evidence §249, at 104 (4th ed. 1992) ("The need for the evidence is slight, the likelihood of misuse great"); 1 B. Bergman & N. Hollander, Wharton's Criminal Evidence §4:47, at 489 (15th ed. 2000)
.  In this case, the insight into police procedure provided by the hearsay identification had minimal probative value in determining the defendant's guilt or innocence.  The danger that the jury would take such testimony as direct proof of the defendant's guilt, however, is obvious.

When the content of the out-of-court statement goes to "the very essence of the dispute," the balance tips against admissibility.  
Warlick
, 302 Ill. App. 3d at 600, 707 N.E.2d at 218; 
People v. Bruce
, 299 Ill. App. 3d 61, 67, 701 N.E.2d 63, 67 (1998).  Here, the State assures us that the out-of-court identification did not go to the essence of the dispute.  We, however, are at a loss to imagine what could be more central to the determination of the defendant's guilt or innocence than whether he was "involved in" the shooting. 

In 
People v. Rivera
, 277 Ill. App. 3d 811, 661 N.E.2d 429 (1996), a police officer related that unnamed bystanders at the scene of a shooting identified the defendant and two companions as the gunmen.  On appeal, the court ruled that the words of identification went "to the essence of the dispute: whether the defendant was the man who committed the crime." 
Rivera
, 277 Ill. App. 3d at 818, 661 N.E.2d at 433.  The court held: "Hearsay testimony identifying the defendant as the one who committed the crime cannot be explained away as 'police procedure,' even where the trial judge limits the evidence to a nonhearsay purpose."  
Rivera
, 277 Ill. App. 3d at 820, 661 N.E.2d at 434.

On the other hand, the testimony in this case that a bystander told the police where the defendant lived was admissible to explain the course of the investigation.  Once the police had the defendant's name, the fact that onlookers who had gathered at the scene knew where that person lived, only a few blocks away, did not go to the essence of the dispute.  The relevance of the testimony, while slight, was not substantially outweighed by the danger of unfair prejudice from its misuse.  In any case, it was not an abuse of discretion to admit the testimony.

Admission of Officer Pickett's testimony concerning the out-of-court identification was a serious error.  But the defendant did not call this error to the trial court's attention.  Given the strength of the properly admitted evidence against the defendant, we do not believe the hearsay identification rose to the level of plain error under the circumstances of this case.  "A reviewing court will examine an issue not properly preserved under the plain error doctrine where the evidence is closely balanced or the alleged error is so fundamental that it denies the defendant a fair trial."  
People v. Thomas
, 178 Ill. 2d 215, 235, 687 N.E.2d 892, 900-01 (1997).  

The 
Furby
 court considered admission of the hearsay testimony as plain error because the evidence was closely balanced. 
Furby
, 228 Ill. App. 3d at 8, 591 N.E.2d at 539. We do not find the evidence to be closely balanced in the instant case.  Three eyewitness, two of whom knew the defendant from the neighborhood and one of whom went to school with the defendant, identified him as one of the gunmen.  There was also testimony of a prior death threat.  The codefendants had a strong revenge motive for the shooting.  Although the defendant called three members of his family to the stand, only one placed him at home at the actual time of the shooting, which occurred only a few blocks away.  

In 
People v. Virgin
, 302 Ill. App. 3d 438, 707 N.E.2d 97 (1998), another case in which the court found erroneous admission of hearsay in police testimony to be plain error, the court held that the cumulative effect of multiple hearsay errors was of sufficient magnitude to deny the defendant a fair trial. 
Virgin
, 302 Ill. App. 3d at 445, 707 N.E.2d at 102. In this case, only one such error has been identified, and we do not believe that, standing alone, it was sufficient to deny the defendant a fair trial.

II

With regard to his sentence, the defendant contends that the trial court erred in considering more than one victim impact statement.  The Rights of Crime Victims and Witnesses Act (the Act) grants crime victims the right to present a victim impact statement at sentencing.  725 ILCS 120/6 (West 1996).  If the victim is dead at the time of sentencing, "crime victim" is defined as "a single representative who may be a spouse, parent, child, or sibling of a person killed as a result of the violent crime." 725 ILCS 120/3(a)(3) (West 1996).  Because the court considered statements from more than one relative of Gercha Young, the defendant claims that his sentence must be vacated and a new sentencing hearing be held.  We disagree.

This court rejected a claim of this type in 
People v. Benford
, 295 Ill. App. 3d 695, 692 N.E.2d 1285 (1998).  As we noted in 
Benford
, the Act provides: "Nothing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case."  725 ILCS 120/9 (West 1996).  

The defendant claims that the holding of 
Benford
 has been thrown into question by 
People v. Hope
, 184 Ill. 2d. 39, 702 N.E.2d 1282 (1998).  According to the defendant, the court in 
Hope
 relied in part upon the Act in holding that victim impact statements from offenses other than the one for which the defendant was being sentenced were inadmissible.  We read 
Hope
 differently.  The court in 
Hope
 did not hold that the Act prohibited the consideration of victim impact statements for other crimes.  Rather, the court merely rejected the prosecution's claim that the Act mandated that such statements be considered.  The basis upon which the court held that the statements should have been excluded was irrelevance, not violation of the Act.  
Hope
, 184 Ill. 2d at 53, 702 N.E.2d at 1289.

Further, the defendant has waived this issue by failing to object either at the sentencing hearing or in a posttrial motion.  
Enoch
, 122 Ill. 2d at 186, 522 N.E.2d at 1129.

III

The State argues that the defendant must be resentenced because his sentence did not conform to a statutory requirement and is therefore void. 
People v. Arna
, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995).  According to the State, consecutive sentencing was mandated by section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1996)), and we must vacate the sentence and remand for the entry of consecutive sentences.  We disagree.

Sentencing is a matter of judicial discretion and absent an abuse of that discretion the sentence should not be disturbed.  
People v. Williams
, 262 Ill. App. 3d 734, 746, 635 N.E.2d 781, 790 (1994).  In this case, there is no claim that the sentencing judge made any sort of legal mistake about the requirements of 5-8-4(a). See 
People v. Foster
, 309 Ill. App. 3d 1, 12, 722 N.E.2d 658, 667 (1999).  Rather, the State simply disagrees with an explicit factual finding upon which the sentence was based, 
i.e.
, that Reggie Rupert did not suffer severe bodily injury.  The record is not entirely devoid of support for the trial court's finding.  Reggie Rupert was only in the hospital for two days because of the injury.  The trial court was in the superior position to make factual findings. 
People ex rel. Ryan v. Bishop
, 315 Ill. App. 3d 976, 978, 735 N.E.2d 754, 756 (2000).  We will not disturb the court's determination.

For the foregoing reasons, the judgment and sentence of the circuit court are affirmed. 

Affirmed.

McNULTY, P.J., and TULLY, J., concur.