2023 IL App (1st) 211439-U

No. 1-21-1439

Order filed May 16, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 19106 |
| | ) | |
| CION RICE, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's sentence affirmed where the circuit court did not abuse its discretion in imposing concurrent prison terms of 37 years for first degree murder and 10 years for attempted first degree murder.

¶ 2    Following a 1999 jury trial, defendant Cion Rice was found guilty of first degree murder and attempted first degree murder. Defendant was 17 years old when he committed the offenses. The trial court imposed concurrent prison terms of 50 years for first degree murder and 10 years

for attempted first degree murder. This court affirmed on direct appeal. *People v. Rice*, 321 Ill. App. 3d 475 (2001).

¶ 3        Defendant then filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Defendant requested a new sentencing hearing, arguing that his 50-year sentence constituted cruel and unusual punishment in violation of the eighth amendment. The circuit court ultimately vacated defendant's sentences and ordered a new sentencing hearing. Following the new sentencing hearing, the circuit court imposed concurrent prison terms of 37 years for first degree murder and 10 years for attempted first degree murder. Defendant appeals, contending that the court abused its discretion by misapplying the mitigating factors set forth in section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2020)). We affirm.

¶ 4        As reflected in our prior order, the trial evidence established that on June 18, 1998, defendant pointed at Reggie Rupert and stated that he would kill him. *Rice*, 321 Ill. App. 3d at 478, 480. On June 21, 1998, Rupert and his girlfriend Gerchaton Young were conversing outside of Gercha's cousin's home.[1] *Id.* at 477. Gercha was sitting in the front passenger seat of a vehicle, and Rupert stood outside the vehicle. *Id.* As they conversed, a maroon vehicle approached, and the individuals in the rear seat, whom Rupert identified as defendant and Donzell Lowe, opened fire, injuring Rupert and killing Gercha.[2] *Id.* at 477-78. At the time of the shooting, Rupert had recently been released on bail after being charged with the murder of Lowe's brother. *Id.* at 477.

---

[1] In this order, as in our order on direct appeal, we will refer to Gerchaton Young as Gercha. As several witnesses and individuals mentioned in the evidence have the same last name as Gercha, we will refer to them by their first names.

[2] Donzell Lowe was tried separately from defendant and is not a party to this appeal.

¶ 5     The jury found defendant guilty of the first degree murder of Gercha and the attempted first degree murder of Rupert. *Id.* at 480. The trial court imposed concurrent prison terms of 50 years and 10 years, respectively. *Id.* On direct appeal, defendant argued that the trial court committed reversible error by admitting hearsay testimony and erred in considering multiple victim impact statements at sentencing. *Id.* at 477. We affirmed. *Id.*

¶ 6     On June 20, 2017, defendant filed a postconviction petition asserting that his 50-year sentence constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments under *Miller v. Alabama*, 567 U.S. 460 (2012) and *People v. Buffer*, 2019 IL 122327. The circuit court advanced the petition to the second stage and appointed counsel, who filed two supplemental petitions. The circuit court granted defendant's petition, vacated his sentences, and ordered a new sentencing hearing.

¶ 7     At the new sentencing hearing, the circuit court received a new presentence investigative report (PSI), which reflected that defendant was 40 years old at the time of the interview. As a minor, he had been adjudicated delinquent for unlawful use of a weapon and possession of ammunition in 1995 and again in 1996. In 1995, he was also adjudicated delinquent for possession of a controlled substance, possession of cannabis, aggravated assault, two court order violations, and aggravated discharge of a firearm. As an adult, defendant was convicted of attempted murder in 1999. Defendant reported maintaining relationships with his mother and sister. Defendant was raised by his mother and grandfather and stated that his family still supports him. He denied being abused and reported that his basic needs were met as a child, but that he may have suffered childhood trauma due to "family dying around him."

¶ 8    Defendant was expelled from high school for missing classes and detention. He desired to continue his education but had been unable to enroll in the prison's GED program because he was "far down" on the waitlist since his sentence was so lengthy. Defendant, however, completed courses in prison ministry, college skills, and "being a father."[3] Defendant admitted gang involvement with the Black P Stones from age 10 to his early 20s. Defendant denied being diagnosed with psychological conditions but reported seeing a mental health professional as a juvenile for counseling. Defendant admitted to drinking alcohol and smoking marijuana but denied this caused problems for him, although he completed substance abuse treatment as a juvenile. Defendant did not take pride in criminal behavior and stated that he sometimes felt that he lacked control over events in his life because he failed to think of the consequences of his actions.

¶ 9    In aggravation, Gercha's mother Catherine Young presented a victim impact statement. She stated that defendant took Gercha's dream of being an architect away. Gercha's death was very painful for her family, and Catherine was upset with the law that permitted defendant's sentence to be reduced.

¶ 10    Jonetta Young, Gercha's sister, published a victim impact statement prepared by Edward Young, Gercha's cousin. Edward stated that he and Gercha grew up like siblings. Gercha was a sweet and loving person, and her death created "an empty space that cannot be filled."

¶ 11    The State submitted additional victim impact statements from Gercha's relatives that were not published but are included in the record on appeal. The statements expressed their love for Gercha and the devastating effect of her death on the family.

---

[3] In the PSI, defendant stated that he did not have children.

¶ 12    The State argued that defendant was almost 18 years old at the time of the present offenses and denied being abused or neglected as a child. Defendant participated in planning the murder when, in the course of a gang conflict, he threatened Rupert a few days prior to the shooting and then went to "kill in retaliation" for the murder of Lowe's brother. The State asked the court to consider defendant's escalating behavior from attempted murder to murder and that defendant was on home confinement when he committed these offenses.

¶ 13    In mitigation, defendant presented a developmental life history investigation report conducted by Caryn Platt Tatelli, a forensic social worker. Tatelli explained that defendant's father "was never involved in his life" and he was abandoned by his mother at a young age. Defendant lived with his grandfather but "became a teenager on the streets," seeking connections that he lacked. As an adolescent, defendant witnessed the shooting deaths of his brother and a friend. Though defendant was 17 years old at the time of the offenses, he was "significantly developmentally and neurologically younger due to his delayed developmental trajectory." She indicated that defendant showed "remarkable potential" for rehabilitation.

¶ 14    Brenda Rice Davis, defendant's mother, testified that when she became pregnant with defendant, she was not ready to be a parent. Davis and her father raised defendant, but defendant lived with her father for most of defendant's life, including summers and during "financial struggles." From ages 8 to 15, defendant witnessed Davis' husband physically abuse her. After Davis separated from her husband, defendant became the primary caretaker for his younger sister, and Davis relied on defendant to take care of the house while she worked. She moved to Georgia with defendant and his sister, but she "couldn't get stable," so she sent them to live with her father,

who was unable to "keep track" of defendant. Davis stated that she neglected defendant and was not there for him, which allowed others to influence him.

¶ 15    Defendant submitted letters from two business owners who knew him and indicated that they would hire him upon his release. Defendant also submitted letters from his niece and nephews, who expressed their desire for him to be released.

¶ 16    Defense counsel argued each of the mitigation factors set forth in section 5-4.5-105(a) of the Code (730 ILCS 5/5-4.5-105(a) (West 2020)). Counsel reiterated that defendant committed the offenses at age 17 and was "subject to outside pressure" from gang members. Counsel further argued that defendant was neglected by his mother, which affected the development of his brain, and witnessed domestic violence. While defendant received seven tickets while incarcerated, counsel stated that they were not for "very serious things" and argued that defendant was rehabilitated.

¶ 17    In allocution, defendant apologized to the Young family and stated that he "grew up" and was "trying to right [his] wrongs."

¶ 18    In sentencing defendant, the court found that he was not beyond rehabilitation, permanently incorrigible, or irretrievably depraved, and it would therefore not impose a sentence greater than 40 years. Rather, the court found that defendant's expression of remorse to the Young family was sincere, he demonstrated a capacity for rehabilitation, and his disciplinary problems in prison were minimal.

¶ 19    The court then discussed each of the mitigating factors in section 5-4.5-105(a) of the Code, noting that defendant committed the offenses when he was "almost" 18 years old with no cognitive or developmental disability. Defendant was a gang member and "made a choice" to shoot Rupert

without regard to injuring others, and no evidence suggested that he was pressured to commit the offenses. Instead, defendant was the "moving force" in the offenses, when he actively searched for Rupert to "exact revenge," resulting in Gercha's life being "snuffed out" for "being in the wrong place, at the wrong time." Davis indicated that raising defendant was difficult at times and she neglected him, but defendant reported that he did not suffer childhood abuse and his basic needs were met as a child. There was also no evidence of physical or emotional abuse, and defendant did not suffer "childhood traumas." The court noted that two of defendant's "gun cases" may have been rendered void by the supreme court's decision in *People v. Aguilar*, 2013 IL 112116, but were still significant because defendant "went through the system not once but twice" before committing the present offenses. The court emphasized that defendant received probation on one of the juvenile cases, which "has a lot to offer a young person," but "it didn't take." Further, defendant was on home confinement when he committed these offenses. Defendant meaningfully participated in his defense, where he communicated with trial counsel and aided in his defense.

¶ 20    The court stated that it exercised its discretion and declined to impose the firearm sentencing enhancement. The court sentenced defendant to concurrent prison terms of 37 years for first degree murder and 10 years for attempted first degree murder.

¶ 21    Defendant filed a motion to reconsider sentence arguing, *inter alia*, that the court improperly applied the *Miller* factors and that his sentence was excessive. The circuit court denied the motion.

¶ 22    On appeal, defendant contends that the circuit court abused its discretion when imposing sentence because it failed to adequately consider his youth and attendant circumstances, and therefore, imposed an excessive sentence.

¶ 23    A court shall impose a sentence reflecting both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The sentencing court is afforded broad discretion when imposing sentence, and great deference is given to that sentence. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 34. Such deference is appropriate because the sentencing court is best positioned to assess the defendant's credibility, habits, age, demeanor, social environment, mentality, and general moral character. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 24    When a defendant challenges a sentence within the permissible range for the offense, the reviewing court will not disturb the sentence absent an abuse of discretion. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. In the sentencing context, a sentence that is "greatly at variance with the spirit and purpose of the law" or "manifestly disproportionate to the nature of the offense" constitutes an abuse of discretion. *People v. Grayer*, 2022 IL App (1st) 210808, ¶ 50. A sentence that falls within the statutory limitations is presumed proper unless the defendant affirmatively shows otherwise. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 25    Here, the jury found defendant guilty of first degree murder and attempted first degree murder, subjecting him to prison terms of 20 to 60 years and 6 to 30 years, respectively. 730 ILCS 5/5-4.5-20(a), 5-4.5-25(a) (West 2020). At resentencing, the court imposed concurrent prison terms of 37 years for first degree murder and 10 years for attempted first degree murder, which fall within the statutory limitations and are presumed proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 26    When sentencing a juvenile, the court must consider the following factors in mitigation: (1) defendant's age, impetuosity, and level of maturity at the time of the offense; (2) outside

pressures; (3) defendant's family, home environment, educational and social background; (4) rehabilitative potential or evidence of rehabilitation; (5) "the circumstances of the offense"; (6) defendant's degree of participation and role in the offense; (7) defendant's ability to meaningfully participate in his defense; (8) prior juvenile or criminal history; and (9) any other relevant and reliable information, including an expression of remorse, if appropriate. 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 27    Defendant contends that the court abused its discretion by "ignor[ing] significant details" about his background, including his immaturity due to his age, gang involvement, and difficult childhood. Therefore, according to defendant, the circuit court misapplied the factors set forth in section 5-4.5-105(a) of the Code.

¶ 28    The record establishes that at resentencing, defense counsel argued the same mitigating factors that defendant now argues on appeal. The court was aware of defendant's age, gang involvement, and difficult childhood from the PSI, developmental life history investigation report, and Davis' testimony. We, therefore, presume that the court considered this information, absent evidence to the contrary. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 ("Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it."). Though the court did not need to articulate each factor when imposing sentence (*People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51), the record establishes and defendant acknowledges that the court expounded on each mitigating factor prior to imposing sentence. It is not our duty to reweigh these factors and substitute our judgment for that of the circuit court. *People v. Alexander*, 239 Ill. 2d 205, 214-15

(2010). Defendant bears the burden of affirmatively showing that the court did not properly weigh or consider the mitigating factors, and he has failed to do so.

¶ 29     Furthermore, it is evident that the court imposed sentence after balancing the mitigation factors against the evidence in aggravation and considering the particular circumstances in this case. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27; see also *People v. Fern*, 189 Ill. 2d 48, 53 (1999). The court expounded on each mitigating factor set forth in section 5-4.5-105(a). In aggravation, the court considered defendant's juvenile delinquency background, the fact that defendant wanted to "exact revenge," and the impact of Gercha's death on her family. The court noted that defendant received probation, which "has a lot to offer a young person," but "it didn't take" as defendant ultimately went to juvenile detention and committed attempted murder in a separate case and the instant offense of first degree murder. Moreover, defendant was on home confinement when he committed the instant offenses. The court also considered that defendant was the "moving force" in the offenses when he actively searched for Rupert to "exact revenge," and it resulted in the death of Gercha, someone "guilty of nothing more than being in the wrong place at the wrong time." The court properly weighed the mitigating factors against the evidence in aggravation, considering the circumstances of the offenses.

¶ 30     Defendant essentially asks this court to reweigh the sentencing factors and substitute our judgment for that of the circuit court, which we cannot do. *Stacey*, 193 Ill. 2d at 209. Accordingly, we conclude that the circuit court did not abuse its discretion and defendant's sentence was proper because he failed to establish that his sentence is "greatly at variance with the spirit and purpose of the law" or "manifestly disproportionate to the nature of the offense" as to constitute an abuse of discretion. *Grayer*, 2022 IL App (1st) 210808, ¶ 50.

¶ 31    The judgment of the circuit court of Cook County is affirmed.

¶ 32    Affirmed.