2020 IL App (1st) 180515-U

FIFTH DIVISION
March 27, 2020

No. 1-18-0515

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) ) | |
| v. | ) | No. 95 CR 12124 (04) |
| | ) | |
| DWAYNE BRUCE, | ) ) | |
| | ) | Honorable Vincent M. Gaughan, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court correctly dismissed petitioner's ineffective assistance of counsel claim at the second stage, but erred in dismissing petitioner's claim of actual innocence. Petitioner's request for remandment to a different judge is denied. Reversed and remanded for a third-stage evidentiary hearing on petitioner's actual innocence claim.

¶ 2    Following a 1997 jury trial, petitioner Dwayne Bruce was convicted of first-degree murder and armed robbery in connection with the shooting death of Tedrin West. Following denial of his direct appeal and initial postconviction petition, petitioner filed two motions for leave to file successive petitions and a supplemental petition. The circuit court consolidated the successive and

supplemental petitions and granted the State's amended motion to dismiss the petitions. Petitioner appeals, contending that he made a substantial showing of actual innocence or alternatively, ineffective assistance of counsel, and he asks that we remand this matter for a third-stage evidentiary hearing before a different trial judge. We reverse the judgment of the circuit court and remand this matter for a third-stage hearing on petitioner's actual innocence claim.

¶ 3                                    BACKGROUND

¶ 4     The facts adduced at trial were thoroughly set forth in petitioner's direct appeal. See *Bruce*, 299 Ill. App. 3d 61. Accordingly, we will limit our discussion only to those facts pertinent to the issues raised here.

¶ 5                              Trial and Previous Appeals

¶ 6     At trial, Robyn Cherry testified that, on the evening of May 11, 1993, when she was 12 years old, she went to a party in the Ida B. Wells housing project with her boyfriend, Larry McGee (who also went by the names Mark Benton and Dwayne Taylor). At that party, they met petitioner and some other individuals, whose names were Kenny, Courtney Donelson, Troy, and Robert Seals.

¶ 7     McGee suggested that they rob someone. The group agreed to do so, and left in McGee's station wagon. Shortly before 9 p.m., they saw a black Nissan Pathfinder being driven by Tedrin West. The group followed West to a currency exchange, and while West was inside, McGee hid behind the car with a gun in his hand. When West got back in the Pathfinder, McGee put the gun to the window. He ordered West to take the keys out of the ignition and open the door. West complied and then McGee, petitioner, and Robert Seals got in the Pathfinder with West and drove off. Their companions followed in the station wagon.

¶ 8    The Pathfinder went to three different houses.  At each, McGee called out to his associates in the station wagon that West was "playing games."  Then they drove to a deserted street.  McGee and petitioner, each armed, exited the Pathfinder with the victim.  Petitioner ordered West to lie down on the ground and then shot him in the back of the head.

¶ 9    McGee showed the others jewelry taken from West.  Cherry testified that, among these items was a chain that she described as a "flip-flop."  According to Cherry, petitioner displayed a gold ring with a diamond-encrusted six-point star as proceeds of the robbery.

¶ 10   The group then drove back toward the Dan Ryan Expressway in a "crazy" manner and running a stop sign while en route.  Two police officers tried to stop the Pathfinder twice, but that vehicle sped away after the officers exited their squad car.

¶ 11   The police later found the Pathfinder abandoned on the side of the expressway with the door open and the motor running.  They impounded the Pathfinder and notified West's father, in whose name the vehicle was titled.

¶ 12   After retrieving the Pathfinder, West's father called West's mother and informed her that the Pathfinder had been found abandoned.  She tried to reach West on his pager and cell phone.  Initially there was no answer, but eventually a man whom she did not recognize answered.  When she asked where her son was, the man said, "He's gone."  When she asked where her son went, the individual replied, "He's gone, bitch," and hung up.  West's mother gave the police a photograph of her son, and they found his body soon afterwards.  A. 38-caliber bullet and bullet fragment was recovered from West's body.

¶ 13   The police examined West's cell phone records and noted that, after the time of the murder, calls had been made to two women, each of whom had a child with petitioner.  A few weeks later, police officers pulled over petitioner when he ran a red light.  McGee and two other individuals

3

were passengers in the vehicle. The officers arrested the occupants and recovered a .38-caliber revolver from the car. This gun was of the same general type as that used to kill West.

¶ 14    Months later, in December 1994, petitioner was arrested in connection with West's murder. Petitioner at that time had in his possession a ring with a diamond-encrusted six-point star and a "flip flop" chain in his possession. Petitioner said that he had purchased the chain several months prior and the ring in 1989. Petitioner recalled purchasing the chain "on the street" but could not remember where he had purchased the ring. Chicago police detective Boylan testified that family members of West identified the ring as West's.

¶ 15    Cherry testified that McGee had sent her to stay with his sister in Iowa to prevent her from speaking to the police. Cherry, however, returned to Chicago about a year later and spoke to police. Cherry told police detectives about the events surrounding the murder and that petitioner shot West. She did not know petitioner's real name at that time but gave a physical description and an address. In exchange for reduced charges, she agreed to testify about this murder and an unrelated home invasion and murder.

¶ 16    During closing arguments, defense counsel argued that Cherry did not see anything and fabricated all her testimony, and that Seals told her "the whole story." The jury found petitioner guilty of armed robbery and first-degree murder. The circuit court sentenced petitioner to consecutive terms of 100 years[1] and 6 years for the first-degree murder and armed robbery convictions, respectively.

¶ 17    On direct appeal, petitioner contended that the circuit court erred in allowing the gun into evidence, erred in allowing the detectives' hearsay statements regarding the identification of the

---

[1] Defendant later filed a *pro se* petition for relief pursuant to section 2-1401 of the Code of Civil Procedure alleging that the 40-year extended term portion of his sentence was void. On appeal, we vacated the 40-year term and modified his sentence to reflect a 60-year sentence for first-degree murder. *People v. Bruce*, 2012 IL App (1st) 101109-U, ¶ 28.

jewelry in petitioner's possession, and abused its discretion in imposing sentence. We rejected these contentions and affirmed petitioner's convictions and sentence. *People v. Bruce*, 299 Ill. App. 3d 61 (1998).

¶ 18    Petitioner then filed a postconviction petition in which he claimed that (1) he received ineffective assistance of counsel, (2) his conviction was based upon perjured testimony, and (3) his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed his petition at the second stage, and we affirmed. *People v. Bruce*, No. 1-02-3361 (2004) (unpublished order pursuant to Supreme Court Rule 23).

¶ 19                            Proceedings in this Appeal

¶ 20    In 2009, petitioner sought leave to file a successive postconviction petition. Petitioner claimed (1) actual innocence, (2) the State fabricated evidence to obtain the indictment, (3) his postconviction counsel rendered unreasonable assistance, (4) his trial counsel was ineffective for failing to interview and call various witnesses. Petitioner attached letters to petitioner from Cherry, and affidavits from his mother, the victim's brother, and Robert Seals.

¶ 21    Petitioner's mother stated in her affidavit that, when she spoke with Cherry in 2004, "Cherry stated to me that she was sorry for all the pain and suffering that she's caused my family, and that she thought that she had to do what the police told her to." West's brother stated in his affidavit that, although the recovered jewelry appeared to be his brother's, he could not positively identify them as belonging to his brother.

¶ 22    Seals stated in his affidavit that he confessed to having been involved in the murder and that two other individuals named Courtney and "Joe" were also involved. Seals also said that petitioner was neither present at nor involved in the shooting and that Cherry's statement and testimony regarding petitioner's involvement was a lie. Seals stated that he did not implicate

Cherry because she was a minor at the time. Seals added that he told the police that the jewelry taken from the victim included a gold herringbone chain, a diamond anchor charm, a watch, a pager, and a cell phone, but not a gold ring with a six-pointed star or gold link bracelet.

¶ 23    On October 28, 2009, the circuit court denied petitioner's motion for leave to file a successive postconviction petition, and on August 6, 2012, we affirmed. *People v. Bruce*, 2012 IL App (1st) 093401-U. On November 28, 2012, however, our supreme court issued a supervisory order directing us to vacate our order, grant petitioner's motion, and advance his successive petition to the second stage of proceedings. *People v. Bruce*, No. 114889 (Nov. 28, 2012). We did so on January 16, 2013, and remanded the cause to the circuit court for further proceedings.

¶ 24    On April 7, 2011, during the pendency of his appeal from the denial of his 2009 motion for leave to file a successive postconviction petition, petitioner filed a motion for leave to file a *second* successive postconviction petition. Petitioner claimed actual innocence based upon a newly discovered affidavit of codefendant Donelson, as well as the prior affidavits attached to his proffered 2009 successive postconviction petition.

¶ 25    Donelson stated in his January 7, 2010, affidavit that he took part in the 1993 kidnapping, robbery, and murder of the victim, after which a gold herringbone chain with a diamond anchor charm was taken from the victim. Donelson denied being involved in the case when questioned by detectives, telling them that he had learned of the crime from Cherry. Donelson then stated that he was "remorsefully the person responsible" for killing the victim, although Donelson claimed that he only intended to frighten the victim into revealing "where the money was at by firing a single shot from a .44 [M]agnum in the direction of [the victim's] head" while the victim was lying on the ground. According to Donelson, petitioner was "not involved in the case," but Donelson did not tell anyone because he could not do so without incriminating himself. Donelson then

6

wrote, "After my own conviction, I sent word for [petitioner] to get at me [*sic*] so I could see what could be done to help prove his innocence. But I never heard anything back from him, so I stopped trying to reach him." Donelson said that, after his release from prison, he tried to locate petitioner and to see if Cherry had admitted that she had lied about petitioner's involvement in the case. When Donelson found out that Cherry had not recanted her testimony and that petitioner had been looking for Donelson for help with petitioner's case, Donelson stated that he was "here today as I was willing to do years ago *** to help clear an innocent man[']s life."

¶ 26   On June 20, 2011, the circuit court denied petitioner's motion for leave to file a third postconviction petition. On July 29, 2013, however, we vacated the circuit court's order and remanded the matter with instructions to consolidate petitioner's third postconviction petition with the second postconviction petition that was already in the second stage of proceedings. *People v. Bruce*, 2013 IL App (1st) 112187-U.

¶ 27   On February 3, 2015, petitioner filed a supplemental postconviction petition, which included a second affidavit from Seals and an affidavit from Cherry. Seals's affidavit, dated October 18, 2013, initially noted that he was 14 years old at the time of the offense and reiterated that he participated in the robbery and murder of West, along with McGee, Donelson, Cherry, and an individual named "Joe." Seals stated that petitioner did not participate in the crimes and was not in the vehicle when the group drove to the eventual crime scene, but that the police pressured Seals into naming petitioner as one of the assailants. Seals stated that he did not remember who had the gun, and when he heard the gun go off during the robbery, he drove off in the victim's truck. Seals added that he is not sure where "these events" took place because he was not familiar with the neighborhood at the time. Seals added that he confessed to police because he was threatened with being tried as an adult and a lengthy potential prison sentence. Seals added that

7

he never told police that Cherry was involved because she was 12 years old at the time and he did not want her to "get in trouble." Seals further stated that he signed a statement but did not know whether the statement implicated petitioner.

¶ 28 Seals recalled that a gold herringbone chain with an attached diamond anchor, a watch, pager, and cell phone were taken from the victim, but Seals did not recall a gold ring with a six-pointed star and a gold link bracelet having also been taken. Seals added that Cherry's statement and testimony that petitioner was the shooter was a lie.

¶ 29 Seals stated that he was sentenced to juvenile detention in 1995 for these offenses and was unaware until his release from detention that petitioner had been tried and convicted for these crimes. Seals explained that he was arrested in 1997 and charged with an unrelated murder to which he pleaded guilty in 2005. In 2006, Seals provided his first affidavit so that petitioner could "prove his innocence."

¶ 30 Cherry's affidavit, dated May 9, 2017, stated that, she was questioned "very aggressively" at the police station regarding West's murder. She added that, although she was 12 years old at the time, she was threatened with being charged as an adult and sentenced to a possible natural life sentence. Detectives asked her to identify a "[six] pointed star ring that was encrusted with diamonds." Cherry stated that she had seen petitioner in possession of the ring before 1993 and that it was not taken from West. Cherry stated that she told the police this, but they "insisted that this was taken from [West]." Cherry said that neither her trial testimony that the ring had been taken from West nor her testimony identifying the gun was true.

¶ 31 On August 31, 2017, the State moved to dismiss petitioner's consolidated petitions. On February 5, 2018, the circuit court heard arguments on the State's motion. Following arguments, the court noted that Donelson admitted shooting the victim "with a .44[-caliber firearm]," which

contradicted the State's evidence that .38-caliber bullet fragments were recovered at the scene. The court said that there was a "world of difference between those two weapons" and that fact undermined Donelson's credibility. As to Cherry, the court observed that, despite recanting certain parts of her trial testimony, she did not recant her testimony that petitioner was the shooter. The court then granted the State's motion to dismiss. This appeal follows.

¶ 32                                    ANALYSIS

¶ 33     Petitioner alleges that the circuit court erred in granting the State's motion to dismiss his consolidated successive postconviction petitions at the second stage of proceedings. Petitioner first contends that he made a substantial showing of actual innocence based upon the affidavits of Donelson, Seals, and Cherry. In the alternative, petitioner contends that he made a substantial showing that his trial counsel rendered ineffective assistance for failing to interview and call Seals. Finally, petitioner asks that we reverse the court's granting of the State's motion to dismiss and remand this matter for third-stage proceedings before a different trial judge because petitioner claims that the judge unfairly prejudged the credibility of witnesses. We begin our analysis with petitioner's alternative claim of error.

¶ 34     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010) (Act) allows a petitioner to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues

that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Id.* at 274; 725 ILCS 5/122-3 (West 2016).

¶ 35 In a noncapital case, postconviction proceedings contain three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the circuit court independently reviews the petition, taking the allegations as true, and determines whether the petition is frivolous or patently without merit. *Id.* A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Id.* If the court does not summarily dismiss the petition, it advances to the second stage, where counsel may be appointed to an indigent petitioner, and where the State may respond to the petition. *Id.* ¶ 10. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* If no such showing is made, the petition is dismissed. Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id.*

¶ 36 Here, the petition was dismissed at the second stage of proceedings. During the second stage of proceedings, a petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id.* "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis

in the original.) *Id.* We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 37    Notably, however, the Act contemplates the filing of only one petition without leave of court, and any claim not presented in an original or amended petition is waived. *People v. Sanders*, 2016 IL 118123, ¶ 24 (citing 725 ILCS 5/122–1(f), 122–3 (West 2014)). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39.

¶ 38    Even so, there are two bases upon which the bar against successive petitions is relaxed. The first is when the petitioner satisfies the cause and prejudice test. *Sanders*, 2016 IL 118123, ¶ 24. The second method is when the petitioner demonstrates actual innocence by producing evidence that is (1) newly discovered, (2) not discoverable earlier through the exercise of due diligence, (3) material and not merely cumulative, and (4) of such conclusive character that it would probably change the result on retrial. *Sanders*, 2016 IL 118123, ¶ 24 (citing *People v. Edwards*, 2012 IL 111711, ¶ 32; *People v. Morgan*, 212 Ill. 2d 148, 154 (2004)). The new evidence must support total vindication or exoneration, not merely a reasonable doubt of the petitioner's innocence. *People v. Collier*, 387 Ill. App. 3d 630, 636 (2008) ("[T]he hallmark of 'actual innocence' means 'total vindication,' or 'exoneration.' ").

¶ 39                    Ineffective Assistance of Counsel

¶ 40    Petitioner contends in the alternative that he made a substantial showing that his trial counsel rendered ineffective assistance for failing to interview and call Seals. Petitioner argues that, had the jury heard Seals's statements in his affidavits that petitioner was not present or involved in the murder, there is a reasonable probability that the outcome would have been different.

¶ 41    Claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish ineffective assistance, a petitioner must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner. *Id.* Deficient performance is performance that is objectively unreasonable under prevailing professional norms, and prejudice is found where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Petrenko*, 237 Ill. 2d at 496-97; *Strickland*, 466 U.S. at 690, 694. The failure to establish either prong of the *Strickland* test is fatal to the claim. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010) (citing *Strickland*, 466 U.S. at 697).

¶ 42    Matters of trial strategy, however, are generally immune from claims of ineffective assistance of counsel except where the trial strategy results in no meaningful adversarial testing. *People v. West*, 187 Ill. 2d 418, 432-33 (1999). In other words, the effective assistance of counsel merely refers to "competent, not perfect," representation. *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984). Thus, mistakes in trial strategy, tactics, or judgment will not "of themselves" render a trial counsel's representation constitutionally defective. *Id.* For these reasons, we must be highly deferential to trial counsel as to trial strategy, and we must evaluate counsel's performance from her perspective at the time and not "through the lens of hindsight." *Id.* A defendant bears the burden of overcoming the strong presumption that his counsel's decision was the product of sound trial strategy. *People v. Gacy*, 125 Ill. 2d 117, 126 (1988).

¶ 43    Generally, whether to call a particular witness is a matter of trial strategy (*People v. Flores*, 128 Ill. 2d 66, 85-86 (1989)), and strategic choices made after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable" (*Strickland*, 466 U.S. at 690).

An exception to this rule is when counsel's chosen strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). Failure to call a witness will not support an ineffective assistance of counsel claim where the circumstances show that the testimony would likely have been harmful or would have had no probative value to a determination of guilt or innocence. *People v. Ashford*, 121 Ill. 2d 55, 74-75 (1988). Additionally, a defense attorney may choose not to call a witness who could be subject to severe impeachment (*People v. Smado*, 322 Ill. App. 3d 329, 335 (2001)), or if he reasonably believes that under the circumstances the individual's testimony is unreliable or would likely have been harmful to the defendant (*Flores*, 128 Ill. 2d at 106).

¶ 44    In this case, taking petitioner's allegations as true, Seals's affidavits stated that Cherry was present at the time of the offense but that he did not inform the police of this because at the time, Cherry was (like Seals) a minor and Seals did not want to get Cherry "into trouble." At trial, however, the defense theory was that Cherry was told of the offense by Seals and had entirely fabricated her testimony ("made this all up"), *i.e.*, that Cherry was *not* present at the robbery and murder of West. Had petitioner's trial counsel called Seals to testify, and had Seals in fact testified consistent with his affidavits, it would have undermined the defense theory and allowed the jury to conclude that Cherry's trial testimony regarding petitioner's involvement in the robbery and shooting death of West was credible. Since Seals's testimony would likely have been harmful, the failure to call him as a witness was not ineffective assistance of counsel. *Ashford*, 121 Ill. 2d at 74-75. Petitioner has failed to overcome the "strong presumption" that his counsel's decision was the product of sound trial strategy. *Gacy*, 125 Ill. 2d at 126. Since petitioner has not made a substantial showing of both prongs of the *Strickland* test, his ineffective assistance claim

necessarily fails. *Clendenin*, 238 Ill. 2d at 317-18. The circuit court therefore did not err in dismissing his successive postconviction petitions on the claim of ineffective assistance of counsel.

¶ 45                                    Actual Innocence

¶ 46    Petitioner contends that the circuit court erred in granting the State's motion to dismiss his claim of actual innocence. Petitioner argues that he made a substantial showing of actual innocence based upon Donelson's affidavit confessing to West's murder, Seals's affidavits stating that petitioner was not present at the scene, and Cherry's affidavit recanting portions of her trial testimony. Petitioner states that this material warrants an evidentiary hearing.

¶ 47    Although Donelson admitted in his affidavit to murdering the victim, he stated that he shot "in the direction of" West's head with a .44 Magnum, despite the fact that a .38-caliber bullet fragment was recovered from West's body. Since this allegation is positively rebutted by the record, we need not take it as true. See *Domagala*, 2013 IL 113688, ¶ 35.

¶ 48    Cherry's affidavit—in which she recanted her trial testimony that the ring had been taken from West and her testimony identifying the gun recovered from petitioner as the murder weapon—is similarly unsupportive of petitioner's actual innocence claim. Although she recanted her identification of the gun recovered from petitioner as the murder weapon and the ring petitioner allegedly told her was part of the proceeds from the robbery of West, Cherry did not recant her identification of petitioner as the individual who shot West in the back of the head while he was lying on the ground.

¶ 49    Seals's affidavit, however, stated that petitioner was not present at the scene nor involved in the offense. Thus, it flatly contradicted Cherry's unrecanted trial testimony identifying petitioner as the shooter. And while Seals stated in his 2011 affidavit that the gold six-pointed ring was not taken from the victim, the victim's mother testified that the ring belonged to her son.

Nonetheless, we may not make credibility determinations at the second stage; rather, we only examine if petition's well-pled allegations of a constitutional violation, *if proven at an evidentiary hearing*, would entitle him to relief. *Domagala*, 2013 IL 113688, ¶ 35. Therefore, taking into account this proposed evidence, the circuit court erred in rejecting petitioner's actual innocence claim. Petitioner is therefore entitled to a third-stage evidentiary hearing on this claim.

¶ 50    In addition, although petitioner has asked that we remand this matter for further proceedings before a different judge, we reject that request. Petitioner argues that the circuit judge "unfairly prejudged" Donelson's credibility when the judge stated that the factual error concerning the caliber of the murder weapon in Donelson's affidavit undermined Donelson's "credibility." Although, as noted above, it is error to make any credibility determinations at the second stage of postconviction proceedings (see *id.*), a trial judge's rulings alone are almost never a valid basis for a claim of bias or partiality (*Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002)). To support a claim of judicial bias requires either an extrajudicial source or a "deep-seated favoritism or antagonism" at trial. (Internal quotation marks removed.) *Id.* at 280-81 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Petitioner cites no extrajudicial source of bias and the isolated comment from the trial judge cannot reasonably be considered a deep-seated favoritism toward the State or antagonism toward petitioner. We therefore reject petitioner's request.

¶ 51                                    CONCLUSION

¶ 52    The circuit court correctly dismissed at the second stage petitioner's ineffective assistance of counsel claim, but erred in dismissing petitioner's claim of actual innocence. We therefore reverse and remand for a third-stage hearing on that claim. We reject petitioner's request that we direct that further proceedings be heard by a different trial judge.

¶ 53    Reversed and remanded for further proceedings.